Grafton
No. 2009-649

DONALD KIERSTEAD & a.

v.

STATE FARM FIRE AND CASUALTY COMPANY

Argued: March 31, 2010
Opinion Issued: September 17, 2010

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*W. Michael Dunn* and *Karyl Roberts Martin* on the brief, and *Mr. Dunn* orally), for the petitioners.

*Bouchard, Kleinman & Wright, P.A.*, of Hampton (*Shenanne R. Tucker* and *Kenneth G. Bouchard* on the brief, and *Ms. Tucker* orally), for the respondent.

BRODERICK, C.J. The petitioners, Donald and Marilyn Kierstead, appeal an order of the Superior Court (*Vaughan*, J.) dismissing their petition for declaratory judgment as untimely. We affirm.

The following facts appear in the record. The petitioners were insured under a policy issued by the respondent, State Farm Fire and Casualty Company (State Farm). On November 20, 2007, one week after the policy became effective, the petitioners' residence, which State Farm insured, suffered "complete fire damage." On December 12, 2007, State Farm issued a reservation of rights letter to the petitioners' attorney, which stated that there was "a question as to whether [State Farm] is obligated under the . . . policy" for the petitioners' loss because "[i]t is questionable whether [the petitioners] have cooperated with [State Farm] in [its] investigation of th[eir] claim." This letter explained, in detail, the duties imposed upon the petitioners following a loss, including the duty to submit to State Farm, within sixty days after the loss, a signed, sworn proof of loss, and to cooperate fully with State Farm's investigation. The reservation of rights

letter also stated: "No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage."

Also on December 12, 2007, State Farm sent a demand that the petitioners submit a sworn proof of loss, as required by their policy. The demand letter explained that State Farm was handling the petitioners' claim "under a Reservation of Rights" and stated: "Pursuant to New Hampshire Law (RSA 407:15) any action against [State Farm] will be forever barred by law if your writ is not served on the company within 12 months of the date of this notice."

On December 20, 2007, State Farm sent each petitioner a letter, which explained that State Farm was investigating the petitioners' claim under a reservation of rights and which, like the December 12, 2007 letter, stated: "Pursuant to New Hampshire Law (RSA 407:15) any action against [State Farm] will be forever barred by law if your writ is not served on the company within 12 months of the date of this notice."

On April 30, 2008, the petitioners filed a written complaint with the New Hampshire Insurance Department about State Farm's processing of their claim, asserting that State Farm had failed to provide a status report since February 2008, and asking the department to investigate how long State Farm expected its investigation to take, whether additional information was required, and "whether or not [State Farm] intend[s] to pay the claim or deny it." The petitioners wrote that they had "complied with everything that [State Farm had] . . . asked of [them]."

State Farm responded to the complaint in a May 14, 2008 letter explaining that the petitioners' claim had been referred to the special investigative unit "due to a number of suspicious loss indicators" and that, despite repeated attempts, the petitioners had not fully cooperated with State Farm's investigation. State Farm explained that the petitioners had "canceled two scheduled appointments" and that, when they informed State Farm that they had retained counsel, State Farm "attempted to schedule the interview through their attorney without success." State Farm explained that after the interviews were finally conducted in February 2008, it had asked the petitioners to submit certain additional documentation, which they had failed to do. The insurance department forwarded this letter to the petitioners on May 28, 2008.

On June 24, 2008, State Farm acknowledged that it had received the petitioners' proof of loss and informed the petitioners that it neither accepted nor rejected it. State Farm informed the petitioners in July 2008 that it was still investigating their claim to determine its validity.

On September 2, 2008, State Farm notified Donald Kierstead that it had questions about whether it was obligated on the claim because the

petitioners may not have cooperated, the loss may not have been accidental, and the petitioners may have committed fraud. State Farm notified the petitioners verbally on September 11, 2008, and in writing on September 15, 2008, that it had decided to deny coverage for the claim because: (1) the fire was intentionally set; (2) the petitioners failed to cooperate with the investigation; and (3) they violated the fraud provisions of the insurance policy. On or about January 16, 2009, the petitioners filed the instant petition for declaratory judgment. State Farm moved to dismiss the petition, which the trial court granted, and this appeal followed.

In reviewing a trial court's grant of a motion to dismiss, our task is to determine whether the allegations in the petition are reasonably susceptible of a construction that would permit recovery. *Berry v. Watchtower Bible & Tract Soc.*, 152 N.H. 407, 410 (2005). We assume all facts pleaded in the petition to be true and construe all reasonable inferences drawn from those facts in the petitioners' favor. *Id.* We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *In the Matter of Lemieux & Lemieux*, 157 N.H. 370, 373 (2008).

The petitioners first argue that the trial court erred by ruling that their petition was untimely pursuant to RSA chapter 407. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Zorn v. Demetri*, 158 N.H. 437, 438 (2009). We interpret statutes not in isolation, but in the context of the overall statutory scheme. *Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 340 (1996). Our analysis must start with consideration of the plain meaning of the relevant statutes, construing them, where reasonably possible, to effectuate their underlying policies. *Nashua School Dist. v. State*, 140 N.H. 457, 458 (1995). Insofar as reasonably possible, we will construe the various statutory provisions harmoniously. *Id.*

According to its title, RSA chapter 407 governs fire insurance contracts and suits thereon. Because the parties do not appear to dispute that the petitioners' policy was a fire insurance contract within the meaning of RSA chapter 407, we will assume, without deciding, that this is the case.

RSA 407:2 (2006) requires that all fire insurance policies "made, issued or delivered" in this state conform "to all the provisions of the policy form" found in RSA 407:22 (Supp. 2009). *See Forbes Farm P'ship v. Farm Family Mut. Ins. Co.*, 146 N.H. 200, 202 (2001); *Janvrin v. Union Mut. Ins. Co.*, 128 N.H. 555, 556 (1987). The standard policy form set forth in RSA 407:22 contains a provision entitled "Suit," which provides: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the requirements of this policy shall have been

complied with, and unless commenced within 12 months next after inception of the loss." The petitioners' State Farm policy contained a similarly worded provision, which stated: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."

RSA 407:15 (2006) provides: "Unless the [insurance] company shall notify the insured that any action will be forever barred by law if his writ is not served on the company within 12 months next after such notification, he may bring his action at any time." We have previously recognized that there is "an apparent internal inconsistency in the statute between section 15 . . . and the provision in the standard policy, section 22 . . . ." *Hebert Manufacturing Co. v. Northern Assurance Co.*, 108 N.H. 381, 385 (1967). In keeping with our obligation to construe statutes that deal with similar subject matter "so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute," *Nault v. N & L Dev. Co.*, 146 N.H. 35, 38 (2001) (quotation omitted), we have construed RSA 407:22 as setting forth the twelve-month limitations period and RSA 407:15 as requiring an insurer to give notice of this period before relying upon it. *See Janvrin*, 128 N.H. at 556. We have explained that "RSA 407:15 and its predecessors were enacted for the benefit of the insured." *Id.* "The obvious purpose of RSA 407:15 . . . is to allow the insurer to place a twelve month limitation on actions against it only if it gives the insured specific notice of the limitation." *Hebert Manufacturing Co.*, 108 N.H. at 384; see *Maguire v. Merrimack Mut. Fire Ins. Co.*, 125 N.H. 269, 271 (1984). "Such specific notice removes the possibility of an insured failing to bring an action within the time limit because he was ignorant of such a limitation." *Hebert Manufacturing Co.*, 108 N.H. at 384.

We have also held that the twelve-month period begins to run from the date of the notice, and not from the date of the insured's loss as set forth in RSA 407:22. *Janvrin*, 128 N.H. at 556 ("[I]n enacting RSA 407:15, the legislature provided that the twelve months limitation period cannot begin to run until the insurer gives the insured proper notice of the limitation."); *see Hebert Manufacturing Co.*, 108 N.H. at 385-86 ("It seems probable that the Legislature intended the new section 15 . . . to be controlling over the provisions contained in the form of the policy set out in the new section 22."). In this case, it is immaterial whether the twelve-month period runs from either date on which State Farm gave notice to the petitioners (December 12, 2007 or December 20, 2007) or from the date of the fire (November 2007) because using any of these dates, their January 2009 petition was untimely.

The petitioners argue that "[i]t is clear from the plain language of RSA 407:15 that the 12-month limitation period was not intended to apply to a petition for declaratory judgment to determine coverage under a fire insurance policy." They assert that "[r]ead in context, this time limitation on commencing an action against the insurer was only intended to apply to a *writ* for damages arising from the insurer's failure to pay a loss for which coverage was not disputed."

■ The petitioners' reliance upon RSA 407:15 is misplaced because it is merely the notice provision. *Janvrin*, 128 N.H. at 556. It does not provide the limitation period. RSA 407:22 and the policy at issue provide the limitations period, *id.*, and pursuant to their plain language, this limitations period governs both actions at law and equity.

■ RSA 407:22, by its express terms, pertains to "any claim" that is "sustainable in any court of law or equity." Thus, RSA 407:22 is not limited to claims for damages, but also applies to claims in equity, such as declaratory judgment petitions. Similarly, construing the language of the petitioners' policy "as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole," *Bates v. Vt. Mut. Ins. Co.*, 157 N.H. 391, 394 (2008) (quotation omitted), we conclude that the policy provision limiting the time within which an insured may sue State Farm applies to *all* possible legal actions, not just actions at law. The policy provision specifically states that "[n]o action" may be brought unless brought "within one year after the date of loss." A reasonable insured would have understood that this limitation applied to any possible action, not just an action for damages.

■ The petitioners contend that had they brought their declaratory judgment action before State Farm actually denied them coverage, it, necessarily, would have been premature. To the contrary, the declaratory judgment statute, RSA 491:22 (2010), "does not . . . require an actual denial of coverage by an insurer before an insured [may] seek a determination of coverage." *Binda v. Royal Ins. Co.*, 144 N.H. 613, 616 (2000). An insurer's denial of coverage is not necessary to render declaratory relief justiciable. *Id.* at 617. "[T]he statute requires only that the insured know or be able to reasonably discover facts which form the basis of a coverage dispute." *Id.* at 616. The statute's broad language embraces triggering circumstances that fall short of an insurer's actual denial of coverage. *Id.*

■ In *Binda*, for instance, we held that an insurer's reservation of rights letter sufficed to notify the insured of the facts giving rise to a coverage dispute and, thus, to trigger the insured's duty to file a declaratory judgment petition. *Id.* at 616-18. Here, the record shows that the petition-

ers were sufficiently alerted to the facts giving rise to a coverage dispute long before they filed their declaratory judgment petition.

In State Farm's original December 2007 reservation of rights letter, State Farm notified the petitioners that there was "a question as to whether [State Farm] is obligated under the . . . policy" for their loss because "[i]t is questionable whether [the petitioners] have cooperated with [State Farm] in [its] investigation of th[eir] claim." The petitioners concede that this letter notified them that "State Farm might deny coverage" if they "failed to cooperate with the investigation."

Subsequent correspondence made clear that State Farm continued to have concerns about the petitioners' level of cooperation with its investigation. On May 5, 2008, for instance, State Farm notified the petitioners' counsel that the material they provided in lieu of completing the requisite proof of loss form was incomplete and inadequate and that the failure to provide proof of loss constituted a failure to comply with the policy.

Similarly, in its May 14, 2008 response to the petitioners' insurance department complaint, State Farm again cited concerns about their level of cooperation, as well as about the fire's origins. By no later than their receipt of State Farm's May 14, 2008 letter, the petitioners knew or reasonably could have discovered the facts giving rise to a coverage dispute. By then, at the latest, therefore, the petitioners' duty to file their declaratory judgment petition was triggered. *See id.* at 617.

■ The petitioners next argue that State Farm may not rely upon the twelve-month limitations period because it failed to give proper notice as set forth in RSA 407:15. The record shows that State Farm notified the petitioners, by letter, on December 12, 2007, and December 20, 2007, that "[p]ursuant to New Hampshire Law (RSA 407:15) any action against [State Farm] will be forever barred by law if your writ is not served on the company within 12 months of the date of this notice." This notice complies with RSA 407:15.

■ The petitioners next assert that the twelve-month limitation was subject to equitable tolling. Equitable tolling allows a party "to initiate an action beyond the statute of limitations deadline," but "is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights." *Portsmouth Country Club v. Town of Greenland*, 152 N.H. 617, 623 (2005) (quotation omitted). Equitable tolling "applies principally if the plaintiff is actively misled by the defendant about the cause of action." *Id.* (quotation omitted). Here, the petitioners failed to show that State Farm prevented them "in some extraordinary way" from exercising their rights or misled them. *See Forbes Farm P'ship*, 146 N.H. at 204. In fact, the record shows that State Farm notified the petitioners on

numerous occasions that it was investigating their claim under a reservation of rights and that its investigation was not a waiver of any right to deny them coverage.

The petitioners next contend that the twelve-month limitations period should not have commenced to run until they knew or reasonably should have discovered that a declaratory judgment action was necessary to determine coverage under their policy. To support their argument, they rely upon cases construing RSA 508:4, I (2010), which provides a three-year statute of limitations period for "personal actions," and which codifies the common law discovery rule. *See Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 824 (2005). The petitioners, however, provide no authority for applying this rule to the limitations periods set forth in RSA chapter 407, and we are aware of none. We, therefore, decline to apply the "discovery rule" under the facts of this case.

Finally, the petitioners argue that the trial court should have ruled that State Farm was equitably estopped from relying upon the twelve-month limitations period. Estoppel precludes one party from asserting a position contrary to one previously taken when it would be unfair to allow the party to do so. *Petition of Perkins*, 147 N.H. 652, 655 (2002). A party claiming equitable estoppel must prove: (1) a false representation or concealment of material facts made with knowledge of those facts; (2) the party to whom the representation was made must have been ignorant of the truth of the matter; (3) the representation must have intentionally, or through culpable negligence, induced the other party to rely upon it; and (4) the other party must have been induced to rely upon the representation to his or her injury. *Id.* In addition, the reliance upon the representation or concealment must have been reasonable. *Id.* Reliance is unreasonable when the party asserting estoppel, at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was either improper, materially incorrect or misleading. *Id.* The petitioners have not sufficiently alleged the elements required to sustain the application of this theory. *See Hanover Ins. Co. v. Grondin*, 119 N.H. 394, 398 (1979). Therefore, we hold that the trial court did not err by failing to apply it.

*Affirmed.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.