Hillsborough-southern judicial district
No. 2011-406

## REBECCA RIVERA

v.

## LIBERTY MUTUAL FIRE INSURANCE COMPANY

Argued: February 9, 2012
Opinion Issued: May 11, 2012

*McDowell & Osburn, P.A.*, of Manchester (*Mark D. Morrissette* on the brief and orally), for the petitioner.

*Morrison Mahoney LLP*, of Boston, Massachusetts (*Kevin Truland* on the brief and orally), for the respondent.

HICKS, J. In this declaratory judgment action, the respondent, Liberty Mutual Fire Insurance Company (Liberty Mutual), appeals an order of the Superior Court (*Colburn*, J.) denying its motion for summary judgment and granting the summary judgment motion of the petitioner, Rebecca Rivera. Rivera cross-appeals. The court ruled that an automobile policy (policy) issued to Rivera's parents excludes liability coverage but affords uninsured motorist coverage for injuries Rivera sustained in a single-vehicle accident in Dracut, Massachusetts. We affirm.

The trial court found or the record supports the following facts. On May 10, 2008, Rivera was driving a 2005 Toyota Matrix (2005 Toyota) when her front seat passenger, Timothy Chateauneuf, grabbed the steering wheel, causing the vehicle to leave the roadway and strike a tree. Chateauneuf was subsequently convicted of assault by means of a deadly weapon.

At the time of the accident, the policy declarations listed Rivera as a covered driver and the 2005 Toyota as a covered vehicle. The policy contains liability coverage whereby Liberty Mutual agrees to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." However, the policy excludes from this coverage "any 'insured' . . . [w]ho intentionally causes 'bodily injury' or 'property damage' " or who "[u]s[ed] a vehicle without a reasonable belief

that that 'insured' [wa]s entitled to do so" (entitlement exclusion). "Insured" as used in this portion of the policy means, in relevant part, "[a]ny person using 'your covered auto'." It is undisputed that, at the time Chateauneuf grabbed the steering wheel, he was an "insured" under the terms of the policy.

The policy further provides for uninsured motorist coverage, as amended by an endorsement, which states, in relevant part:

> A.   We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of:
>
> > 1.   An "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by an "insured" and caused by an accident; . . . .
>
> . . . .
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

For purposes of this coverage, " '[i]nsured' . . . means . . . [y]ou or any 'family member' [and] . . . [a]ny other person 'occupying' 'your covered auto'."

"Uninsured motor vehicle" is defined, in relevant part, in a separate endorsement, as "a land motor vehicle or trailer of any type . . . [t]o which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage." Nonetheless, an exclusion provides that "uninsured motor vehicle" does not include "any vehicle or equipment . . . [o]wned by or furnished for the regular use of you or any 'family member'." For purposes of this opinion, we will refer to this as the owned vehicle exclusion; however, we note that we have previously referred to a similar exclusion as a household exclusion. *See Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.*, 120 N.H. 73, 74 (1980) (referring to a similar exclusion in the uninsured motorist portion of a policy as the "household exclusion clause").

After Rivera was denied coverage for her injuries by Chateauneuf's insurance carrier, she submitted a claim for coverage from Liberty Mutual pursuant to the policy. Liberty Mutual denied her claim, stating that the 2005 Toyota was excluded from the policy definition of "uninsured motor vehicle."

Rivera then filed a petition for a declaratory judgment, seeking a declaration that she was entitled to recover under the uninsured motorist

portion of the policy, or in the alternative, the liability portion. The parties filed cross-motions for summary judgment. The trial court granted Rivera's motion and denied Liberty Mutual's. The court ruled that the entitlement exclusion precluded recovery under the liability portion of the policy because Chateauneuf could not have had a reasonable belief that he was entitled to use the car as he did. It further determined that statutory liability coverage under RSA 264:18, VI (2004) did not apply "because Chateauneuf was never granted express or implied consent to have possession or control over the vehicle." Nevertheless, the court concluded that "the 2005 Toyota fits within the [policy] definition of 'uninsured motor vehicle' " and, thus, Rivera was entitled to uninsured motorist coverage. These appeals followed.

In reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Progressive N. Ins. Co. v. Argonaut Ins. Co.*, 161 N.H. 778, 780 (2011). Summary judgment may be granted only where no genuine issue of material fact is present, and the moving party is entitled to judgment as a matter of law. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition. *Carter v. Concord Gen. Mut. Ins. Co.*, 155 N.H. 515, 517 (2007); RSA 491:22-a (2010). The interpretation of insurance policy language is a question of law for this court to decide. *Carter*, 155 N.H. at 517. We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Philbrick v. Liberty Mut. Fire Ins. Co.*, 156 N.H. 389, 390 (2007). Insurers are free to contractually limit the extent of their liability through use of a policy exclusion provided it violates no statutory provision. *Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 151 N.H. 649, 653 (2005). The insurer asserting an exclusion of coverage bears the burden of proving that the exclusion applies. *Id.*

Liberty Mutual argues that the trial court erred in finding Rivera was entitled to uninsured motorist coverage under the policy because the 2005 "Toyota fails to meet the policy definition of an 'uninsured motor vehicle' or 'underinsured motor vehicle' pursuant to" the owned vehicle exclusion. It further argues that "the entitlement exclusion precludes coverage under the liability provisions of the . . . policy." Rivera disagrees, and asserts that the owned vehicle exclusion "is unenforceable as it violates the public policy underlying the uninsured motorist statute, [RSA] 264:15, and . . . is contradictory to [that statute's] plain language."

The policy defines "[u]ninsured motor vehicle," in relevant part, as "a land motor vehicle or trailer of any type . . . [t]o which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage." Here, the 2005 Toyota was insured for liability coverage but Liberty Mutual effectively denied such coverage pursuant to the entitlement exclusion. Thus, based upon the policy definition, the 2005 Toyota is an "[u]ninsured motor vehicle." Under the owned vehicle exclusion, however, "uninsured motor vehicle" does not include "any vehicle or equipment . . . [o]wned by or furnished for the regular use of you or any 'family member'." Liberty Mutual argues that this exclusion unambiguously excludes from uninsured motorist coverage "any vehicle" owned by the insured, including the 2005 Toyota covered under the policy. Even assuming it is reasonable to interpret "any vehicle" to include the 2005 Toyota, we find this interpretation to be inconsistent with the purpose of our uninsured motorist statute, RSA 264:15 (Supp. 2011).

"In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Swain v. Employers Mut. Cas. Co.*, 150 N.H. 574, 576 (2004) (quotation omitted). We interpret statutes not in isolation, but in the context of the overall statutory scheme. *Kierstead v. State Farm Fire & Cas. Co.*, 160 N.H. 681, 685 (2010). Our analysis must start with consideration of the plain meaning of the relevant statutes, construing them, where reasonably possible, to effectuate their underlying policies. *Id.*

"Uninsured motorist statutes are designed to provide an innocent victim a source of restitution when that injured party cannot recover the full amount of damages from the tortfeasor." *Swain*, 150 N.H. at 576 (quotation omitted). Such statutes have been liberally construed to accomplish their legislative purpose. *Charest v. Union Mut. Ins. Co.*, 113 N.H. 683, 686 (1973) (decided under former statute). "Uninsured motorist coverage is not intended to be the only source of insurance for individuals. Rather, it is designed to act in concert with already existing standard liability policies." *Swain*, 150 N.H. at 576 (quotation and brackets omitted); *Hein v. Nationwide Ins. Co.*, 106 N.H. 378, 381 (1965) ("uninsured motorists' insurance is not liability insurance in any sense, but resembles limited accident insurance"). We are not at liberty to find uninsured motorist coverage when it is not required by the statute or to read into the statute a prohibition of an exclusion that is neither expressed nor implied. *Charest*, 113 N.H. at 686.

Our uninsured motorist statute provides, in pertinent part:

No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this

state, unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness, or disease, including death resulting therefrom. When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, the insured's uninsured motorist coverage shall automatically be equal to the liability coverage elected.

RSA 264:15, I. The statute requires "that all automobile liability policies include uninsured motorist coverage." *Beliveau*, 120 N.H. at 76 (decided under former statute). "In that sense, uninsured motorist coverage is vehicle related" and "[a]utomobile owners who wish to provide themselves with uninsured motorist coverage in all situations can obtain that coverage by insuring the vehicles they own." *Id.*; *see Turner v. St. Paul Prop. & Liab. Ins. Co.*, 141 N.H. 27, 29 (1996) (noting that "the requirement that all automobile liability policies include uninsured motorist coverage assures that such coverage runs at a minimum to the vehicle insured").

■ The purpose of requiring uninsured motorist coverage is to close a gap in the protection afforded the public under our Financial Responsibility Act. *Charest*, 113 N.H. at 686. To that end, the intent of the statute is "to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability." *Swain*, 150 N.H. at 577 (quotation omitted). The language of the statute "makes clear that the purpose of the . . . statute is to ensure that those who have purchased automobile insurance whose losses would otherwise go uncompensated, either because the tortfeasor lacked liability coverage or because the tortfeasor's identity was unknown, can receive compensation for their injuries." *Matarese v. N.H. Mun. Assoc. Prop. - Liab. Ins. Trust*, 147 N.H. 396, 402 (2002).

■ RSA 264:15 is silent as to who must be provided uninsured motorist coverage other than "persons insured." RSA 264:15, I; *see Beliveau*, 120 N.H. at 76. However, we have previously explained that "persons insured" refers to a person specified in the insurance policy. *Beliveau*, 120 N.H. at 76. Thus, the overall goal of the statute "is to promote a public policy of placing *insured persons* in the same position that they would have been if the offending uninsured motorist had possessed comparable liability insurance by broadening protection for those injured in accidents involving

uninsured motorists." *Miller v. Amica Mut. Ins. Co.*, 156 N.H. 117, 124 (2007) (quotation omitted) (emphasis added).

Here, Rivera's parents purchased the policy to insure the 2005 Toyota and listed Rivera as a person insured thereunder. Rivera was injured while driving the 2005 Toyota when Chateauneuf grabbed the steering wheel and caused the vehicle to leave the roadway and strike a tree. The accident was caused by Chateauneuf's conduct; however, Chateauneuf's insurer denied coverage. Moreover, taking Liberty Mutual's assertions regarding preclusion of liability coverage as correct, the entitlement exclusion precludes liability coverage for Chateauneuf under the policy. As such, under the plain language of RSA 264:15, I, Chateauneuf is the driver of an "uninsured motor vehicle[]" from whom Rivera is "legally entitled to recover damages." RSA 264:15, I.

■ Nonetheless, the terms of the owned vehicle exclusion appear to remove the 2005 Toyota from the definition of uninsured motor vehicle even though, as to Rivera, there is no insurance available. While Liberty Mutual is free to limit the extent of its liability through the use of an exclusion, *see Progressive N. Ins. Co.*, 151 N.H. at 653, it cannot do so in contravention of statutory provisions or public policy, *see Beliveau*, 120 N.H. at 74-75. We construe the plain language of RSA 264:15, I, to prohibit the exclusion at issue as applied to Rivera under the facts of this case. *Cf. id.* at 74, 76 (finding valid a "household exclusion clause" which provided that uninsured motorist coverage did not apply " 'to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured . . . or any relative resident in the same household,' " as applied to an owner-occupant of an *uninsured* vehicle because "[t]he legislature has not designed an insurance scheme that compensates one uninsured motorist for injuries caused by another uninsured motorist"). As to Rivera, the driver and the vehicle were effectively uninsured and, therefore, the uninsured motorist coverage was applicable. *Cf. Kerouac v. Kerouac*, 425 N.E.2d 543, 547 (Ill. App. Ct. 1981) (examining a similar exclusion and finding that "because of the exclusion with respect to liability for injury to family members, the automobile in which [the plaintiff] was riding was not an insured automobile and the driver was not an insured motorist . . . notwithstanding . . . that as to all others the automobile and the driver may have been insured"). This construction effectuates the underlying purpose of the statute "to ensure that those who have purchased automobile insurance whose losses would otherwise go uncompensated . . . because the tortfeasor lacked liability coverage . . . can receive compensation for their injuries." *Matarese*, 147 N.H. at 402.

Indeed, under these circumstances, Rivera is as much entitled to recover under the uninsured motorist coverage of the policy as she would be if she were involved in an accident with another vehicle insured by an insolvent company or with no such coverage at all. *Cf.* RSA 259:117 (2004) (defining "[u]ninsured motor vehicle" for the purposes of RSA 264:15 to "mean, subject to the terms and conditions of the coverage required therein, an insured motor vehicle for which the liability insurer is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency"); *Rodman v. State Farm Mutual Automobile Ins. Co.*, 208 N.W.2d 903, 910 (Iowa 1973) (rejecting the insurer's argument that the intent of Iowa's uninsured motorist statute "is to require liability insurers to provide their insureds protection only against other vehicles without liability coverage"). To deny her claim in this instance would frustrate the purpose of RSA 264:15, I. *See Matarese*, 147 N.H. at 402.

Liberty Mutual argues that "[t]he policy fully complies with the requirements of RSA 264:15, I[,] by providing [uninsured motorist] limits equal to the liability limits." We acknowledge that the amounts and limits in the policy's uninsured motorist coverage meet the minimum statutory requirements for general liability coverage. *See Gisonni v. State Farm Mut. Auto. Ins. Co.*, 141 N.H. 518, 519-20 (1996) (decided under former statute); *Trombley v. Liberty Mut. Ins. Co.*, 148 N.H. 748, 752 (2002) ("The statute requires that a policy providing general liability coverage to an insured also provide uninsured motorist coverage to that insured with the same monetary limits, although not necessarily with the same scope."). Nonetheless, simply because the monetary amount of uninsured motorist coverage equals that of the liability coverage does not answer the central question in this case; namely, whether the exclusion at issue conflicts with RSA 264:15. Here, the exclusion, as applied to Rivera under the facts of this case, contravenes the statute.

Relying upon *Wegner v. Prudential Property and Casualty Insurance Co.*, 148 N.H. 107 (2002), Liberty Mutual further argues that "[t]o construe RSA 264:15, I[,] to require [uninsured motorist] coverage on the facts presented would nullify the entitlement exclusion and render the [uninsured motorist] coverage a substitute for liability coverage." In *Wegner*, the plaintiff's decedent was killed in a single-vehicle accident while a passenger in a car owned and operated by John Albini who was driving with a suspended license. *Wegner*, 148 N.H. at 108. At the time of the accident, Albini had an insurance policy that provided automobile liability and uninsured motorist coverage. *Id.* The uninsured motorist coverage extended to any passenger in Albini's vehicle; however, the policy excluded uninsured motorist coverage to any person claiming that a car insured

under the policy was uninsured because coverage was excluded or denied under another provision in the policy. *Id.* The insurer denied the plaintiff uninsured motorist coverage under this provision because under another provision in the policy, liability coverage was excluded for the named insured while his license was suspended. *Id.* The plaintiff filed an action for declaratory judgment and the trial court held as a matter of law that the insurer was not required to provide uninsured motorist coverage to the plaintiff. *Id.*

On appeal, the plaintiff argued that the uninsured motorist exclusion was void because it conflicted with RSA 264:15. *Id.* We concluded that "where a valid policy exclusion bars liability coverage in a particular situation, RSA 264:15, I, does not mandate [uninsured motorist] coverage for the same injury." *Id.* at 110. We held that the liability exclusion for a driver under license suspension was valid under RSA 259:61, III (1993) (amended 2004), which provided that "[t]he coverages described [in the statutory definition] [of 'motor vehicle liability policy'] shall not apply to a named insured or members of the named insured's household whose driver's license has been suspended or revoked." *Id.* (quotation omitted). Reading RSA 259:61, III in conjunction with the financial responsibility statute, we concluded that the legislature left insurers free to exclude liability for drivers with suspended licenses. *Id.* We further found that construing RSA 264:15, I, to require uninsured motorist coverage when liability coverage is validly excluded pursuant to RSA 259:61, III would contravene the legislative intent as expressed in the plain language of the latter statute. *Id.* In so finding, we were not persuaded by the plaintiff's attempt to analogize the case "to cases in which an insured was injured while trying to stop the theft of his own insured vehicle, because those [we]re not the facts presented." *Id.*

■ Liberty Mutual contends that "[t]he present scenario is not materially different from the facts of *Wegner*, and the same reasoning applies." We disagree. The decedent in *Wegner* was a passenger in the vehicle. As such, he did not fall within the express terms of RSA 264:15, I. The language of that statute makes it clear that the UM protection it requires extends only to persons who are afforded liability coverage under the policy at issue. Liability coverage did not apply to the passenger in *Wegner* because he was not responsible for the operation of the vehicle and therefore "was not insured under [the] policy's general liability coverage under the circumstances in which [he] was injured." *Wegner*, 148 N.H. at 110 (citing *Raudonis v. Insurance Co. of North America*, 137 N.H. 57, 61 (1993)). Here, by contrast, although it was Chateauneuf's improper "use" of the vehicle that caused that accident, the undisputed facts make it clear that Rivera was an authorized operator of the vehicle at the time of the accident.

Thus, she clearly falls within the policy's liability coverage. That being the case, RSA 264:15, I, requires that she be afforded UM coverage regardless of any policy exclusions to the contrary. Because Rivera's status as a lawful operator of the vehicle at the time she was injured establishes her entitlement to coverage under RSA 264:15, I, we need not decide whether she would fall within the terms of the statute merely by virtue of being a named insured in the policy in circumstances where she was not operating the vehicle.

We are also not persuaded by Liberty Mutual's argument that the only way to read "the provisions of RSA 264:3, 264:15, I[,] and RSA 259:117 ... harmoniously" is to interpret

> the term "uninsured motor vehicle" in RSA 264:15, I[,] [a]s ... a vehicle that did not have in effect a motor vehicle liability policy or bond at the time of the accident or "an insured motor vehicle for which the insurer is unable to make payment with respect to the legal liability of its insured ... because of insolvency" [as defined in RSA 259:117].

We do not agree that a reading of these statutes together evinces the legislature's intent to exclude Rivera from uninsured motorist coverage under the facts of this case.

Finally, Liberty Mutual argues that decisions from other jurisdictions support its position. We acknowledge that a split exists among jurisdictions concerning the validity of policy provisions excluding the insured automobile from the definition of "uninsured motor vehicle." *Compare Davis v. Bean*, 804 F.2d 1018, 1019-20 (8th Cir. 1986); *Smith v. Allstate Ins. Co.*, 483 A.2d 344, 347 (Me. 1984); *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 140, 144 (Mo. 1980) (en banc); *and Monroe v. Cogswell Agency*, 234 P.3d 79, 83 (Mont. 2010), *with Nissen*, 851 P.2d at 169; *Rodman*, 208 N.W.2d at 910; *and Fontanez*, 840 S.W.2d at 650. However, for the reasons stated above, we conclude that the owned vehicle exclusion as applied to Rivera under the facts of this case is contrary to our uninsured motorist statute.

In light of our conclusion that Rivera is entitled to uninsured motorist coverage under the policy, we need not consider her alternative arguments that she is entitled to recover under either the liability portion of the policy or RSA 264:18.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.