NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2022-0714
Citation: Pelissier v. GEICO Gen. Ins. Co., 2024 N.H. 60


SHANE PELISSIER & a.

v.

GEICO GENERAL INSURANCE COMPANY

Argued: October 3, 2023
Opinion Issued: October 25, 2024


Backus, Meyer & Branch, LLP, of Manchester (John A. Wolkowski on the brief and orally), for the plaintiffs.


Getman, Schulthess, Steere & Poulin, P.A., of Manchester (Clara E. Lyons on the brief and orally), for the defendant.


BASSETT, J.

[¶1] The plaintiffs, Shane and Maura Pelissier, insured their automobile through the defendant, GEICO General Insurance Company. The plaintiffs filed suit against the defendant seeking underinsured motorist benefits four and a half years after a motor vehicle accident with an underinsured driver. The defendant moved for summary judgment on the ground that the plaintiffs'

automobile insurance policy contained a provision that required any lawsuit filed by an insured against the defendant for damages caused by an underinsured motorist be filed within three years of the date of the accident. The Trial Court (Anderson, J.) denied the motion and transferred three interlocutory appeal questions to this court. See Sup. Ct. R. 8. We answer the first and third questions in the negative, need not address the second question, and remand for further proceedings consistent with this opinion.

[¶2] We accept the statement of the case and facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. See State v. Hess Corp., 159 N.H. 256, 258 (2009). The plaintiffs seek compensation for damages arising out of a July 29, 2017 automobile accident. They assert that the other driver was at fault. The plaintiffs filed suit against the alleged tortfeasor prior to the expiration of the three-year statute of limitations for personal injury claims. See RSA 508:4, I (2010). The plaintiffs maintain that it was not until November 2021 that they learned, during discovery in their case against the alleged tortfeasor, that the tortfeasor's liability insurance policy limit was less than the plaintiffs' accident-related medical expenses. The plaintiffs formally notified the defendant of their intent to file an underinsured motorist claim on November 5, 2021. On November 30, 2021, the defendant denied the plaintiffs' underinsured motorist claim relying on the "Statute of Limitations" provision (hereinafter, contractual limitations provision) in the plaintiffs' insurance policy that required the plaintiffs to file suit for underinsured motorist benefits within three years of the date of the accident — that is, within three years of July 29, 2017.

[¶3] On February 19, 2022 — four and a half years after the accident but less than three months after the defendant denied their claim — the plaintiffs filed suit against the defendant seeking underinsured motorist benefits. The defendant moved for summary judgment arguing that it was entitled to judgment as a matter of law because the plaintiffs failed to bring suit within three years of the date of the accident as required by the contractual limitations provision.

[¶4] The trial court denied the defendant's motion. The trial court reasoned that, because there is no breach of contract until the defendant's purportedly wrongful denial of an underinsured motorist claim, the contractual limitations provision is unenforceable given that it could require insureds to file suit before a justiciable cause of action exists. Additionally, the trial court found that: (1) using the date of the accident as the triggering event for the contractual limitations provision is contrary to the public policy "underlying the . . . statutory requirement in RSA 264:15"; and (2) there is a material factual dispute as to whether the plaintiffs could have discovered the policy limits of the alleged tortfeasor prior to the expiration of the contractual limitations period. The defendant filed a motion for reconsideration. The trial court denied the motion; it nonetheless granted the defendant's interlocutory

appeal motion.  The defendant prepared an interlocutory appeal statement, the trial court signed it, and the defendant submitted the statement to this court.

[¶5] The substance of the questions presented in this interlocutory appeal is whether the trial court erred when: (1) it declined to enforce the contractual limitations provision; (2) it found that there was an issue of material fact as to whether the plaintiffs could have reasonably complied with the contractual limitations provision; and (3) it ruled that the contractual limitations provision is void because it violates the policy underlying New Hampshire's uninsured motorist statute, RSA 264:15.  We answer the first and third questions in the negative and need not address the second.

[¶6] To prevail on a motion for summary judgment, the moving party, here the defendant, must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  RSA 491:8-a, III (2010).  "The facts stated in the [moving party's] accompanying affidavits shall be taken to be admitted for the purpose of the motion, unless within 30 days" the opposing party files contradictory affidavits.  RSA 491:8-a, II (2010).  Mere denials in the opposing affidavits are insufficient to raise an issue of fact for trial.  O'Malley-Joyce v. Travelers Home & Marine Ins. Co., 175 N.H. 245, 250 (2022).

[¶7] We consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party.  Id.  An issue of fact is material for summary judgment purposes if it affects the outcome of the litigation.  Porter v. City of Manchester, 155 N.H. 149, 153 (2007).  Where no material fact is in dispute on appeal, we need only determine whether the moving party, here the defendant, was entitled to judgment as a matter of law.  Lower Village Hydroelectric Assocs. v. City of Claremont, 147 N.H. 73, 75 (2001).  We review the trial court's application of the law to the facts de novo.  Id.

[¶8] We turn to the first and third questions.  Considered together, they present the following issue: whether a contractual limitations provision that is triggered by the date of the accident, rather than the denial of an underinsured motorist claim, is unenforceable because it contravenes the public policy underlying the New Hampshire uninsured motorist statute, RSA 264:15.  On appeal, the defendant argues that parties to a contract are free to agree to establish when the limitations period for a suit for underinsured motorist benefits begins to run.  Here, the defendant argues that the three-year contractual limitations provision triggered by the date of the accident imposes a reasonable restriction that does not violate the public policy underlying RSA 264:15 and is, therefore, enforceable.  The plaintiffs counter that because the contractual limitations period could run before the insured's legal claim against the insurer has accrued, the contractual limitations provision impermissibly

restricts underinsured motorist coverage and is unenforceable. We agree with the plaintiffs.

[¶9] The language of the contractual limitations provision at issue states: "Any claim for damages caused by an <u>uninsured auto</u> . . . must be brought by lawsuit within three years of the date of the accident." (Bolding omitted.) The insurance policy defines "uninsured auto" to include underinsured autos. This language unambiguously provides that an insured must file a suit seeking underinsured motorist benefits within three years of the date of the accident. In general, parties to a contract are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably. <u>Rizzo v. Allstate Ins. Co.</u>, 170 N.H. 708, 713 (2018). We will not, however, enforce a contract or contract term that contravenes public policy. <u>Id</u>. An agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or, as it is sometimes put, if it is at war with the interests of society and is in conflict with the morals of the time. <u>Id</u>.

[¶10] "[T]he overall goal of the [uninsured motorist] statute is to promote a public policy of placing insured persons in the same position that they would have been if the offending uninsured motorist had possessed comparable liability insurance by broadening protection for those injured in accidents involving uninsured motorists." <u>Rivera v. Liberty Mut. Fire Ins. Co.</u>, 163 N.H. 603, 608-09 (2012) (quotation and emphasis omitted); <u>see</u> RSA 264:15 (2024). Although the defendant is correct that there is nothing in the language of RSA 264:15 that prohibits the contractual limitations provision, a contract provision need not conflict with the express terms of the underinsured motorist statute in order to contravene the public policy underlying the statute. <u>Cf</u>. <u>Rivera</u>, 163 N.H. at 607, 609-10 (holding that interpretation of "owned vehicle exclusion" that excluded from uninsured motorist coverage any vehicle owned by the insured violated the public policy underlying RSA 264:15 because restricting compensation for injuries caused by an underinsured motorist would "frustrate the purpose" of the statute).

[¶11] The defendant argues that the contractual limitations provision did not violate the public policy underlying the uninsured motorist statute because it provided the plaintiffs with the same rights they would have had if the tortfeasor had comparable liability coverage. We disagree.

[¶12] A plaintiff who is injured in a motor vehicle accident has three years from the date of the "act or omission complained of" or three years from when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission

4

complained of" to sue the motorist. RSA 508:4, I. In other words, the three-year statute of limitations for personal injury claims starts to run when the plaintiff knew or reasonably should have known of the injury. See id. By contrast, under the contractual limitations provision at issue here, the three-year period to file suit against the insurer begins to run before the occurrence of the "injury" that would be redressed by the underinsured motorist suit. That is because, under the common law, claims for underinsured motorist benefits sound in contract, see Metropolitan Prop. & Liabil. Ins. Co. v. Walker, 136 N.H. 594, 596 (1993), and a cause of action for breach of contract does not arise until the breach occurs. See Coyle v. Battles, 147 N.H. 98, 100 (2001). In the underinsured motorist context, the breach occurs — and therefore the cause of action accrues — when the insurer wrongfully denies underinsured motorist coverage. Walker, 136 N.H. at 598. This means that under the contractual limitations provision, a plaintiff injured by an underinsured motorist will, in effect, have less than three years in which to file suit against the insurer because the three-year period begins to run before the relevant "injury" occurs. Contrary to the defendant's contention, the contractual limitations provision does not, and cannot, change when the cause of action for a suit for underinsured motorist benefits accrues.

[¶13] The insurer's denial of an insured's underinsured motorist claim will always occur at some point after the date of the accident. Indeed, insureds must first ascertain the extent of their damages, discover that the other motorist involved in the accident had insufficient coverage, file a claim for underinsured motorist benefits with their insurer, and have that claim denied before a cause of action for underinsured motorist benefits accrues. See id. at 595, 598; see also Coyle, 147 N.H. at 100. Given the time required for an insured to ascertain whether they have a claim for underinsured motorist coverage, a contractual limitations provision such as the one at issue here could effectively: (1) force insureds to file suit before a cause of action for breach of their insurance contract has accrued; or (2) bar any relief because insureds may not be aware that they have a claim for underinsured motorist benefits prior to the expiration of the three-year period. In either circumstance, the insureds' ability to recover for their injuries is restricted as compared to a person injured in an accident caused by a motorist with liability coverage equal to the liability coverage purchased by the insureds.

[¶14] The defendant argues that the contractual limitations provision does not unreasonably restrict underinsured motorist coverage because there are steps that insureds can take to avoid or minimize the risk of having an underinsured motorist benefits suit barred by the contractual limitations provision. For example, the defendant argues, insureds who believe that they may have a valid claim for underinsured motorist benefits within three years of the date of the accident can either ask their insurer to toll the contractual limitations period, or file a lawsuit for underinsured motorist benefits and then move to stay the proceedings until their suit against the alleged tortfeasor is

5

resolved. As to the former, we decline to allow an insured's ability to receive underinsured motorist benefits to be dictated by his or her insurer's willingness to toll a contractual provision intended to limit the period during which an insured may file suit. As to the latter, we are disinclined to incentivize litigants to bring suit before a cause of action exists. To hold otherwise would, at a minimum, be in tension with our standing doctrine and the rules of professional conduct. See Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 737 (2020) (requiring legal injury to have standing); N.H. R. Prof. Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, . . . unless there is a basis in law and fact for doing so . . . .").

[¶15] Nor are we persuaded by the defendant's contention that without a contractual limitations provision triggered by the date of the accident, insurers could be subject to unreasonable delay when an insurer does not outright deny a claim, and therefore there is no breach, but instead disputes the amount of the claim to be paid. However, this case does not present such a scenario, and therefore we need "not address[ ] what lawful alternatives an insurer may explore to minimize undesirable uncertainty and open-ended liability." Whelan v. State Farm Mut. Auto. Ins. Co., 329 P.3d 646, 651 (N.M. 2014). Moreover, "we are hard-pressed to envision a scenario in which an insured who is in need of benefits and who has a viable [underinsured motorist] claim . . . would delay asserting the claim and remain less than fully compensated any longer than necessary." American States Ins. Co. v. LaFlam, 69 A.3d 831, 842 (R.I. 2013).

[¶16] We note that courts in other jurisdictions have employed similar reasoning and reached the same conclusion when addressing this issue. For example, the Rhode Island Supreme Court in American States Insurance Co. v. LaFlam held that a three-year contractual limitations period triggered by the date of the accident was void because it could require the insured to bring suit before a cause of action for breach of contract against the insurer had accrued. See id. at 833, 841, 844-45; see also Whelan, 329 P.3d at 650-51.

[¶17] Accordingly, because the contractual limitations provision at issue here unreasonably restricts the plaintiffs' ability to obtain the same benefits they would have been entitled to had the alleged tortfeasor had comparable liability insurance coverage, we conclude that it violates the public policy underlying RSA 264:15. Given that we hold that the contractual limitations provision at issue is unenforceable and, therefore, that summary judgment is not appropriate, we need not reach the second interlocutory question: whether the trial court erred when it found that there was an issue of material fact as to whether the plaintiffs could have reasonably complied with the contractual limitations provision. In sum, we answer the first and third questions in the

6

negative, need not address the second, and remand for further proceedings consistent with this opinion.

Affirmed in part and
remanded.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred; NADEAU, J., retired superior court chief justice, specially assigned under RSA 490:3, II, concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.