Merrimack
No. 2012-088

GREAT AMERICAN DINING, INC.

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY

Argued: January 10, 2013
Opinion Issued: February 25, 2013

614

*Primmer, Piper, Eggleston & Cramer, PC,* of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*Morrison Mahoney, LLP,* of Manchester (*Edwin F. Landers, Jr.* and *Caroline K. Delaney* on the brief, and *Ms. Delaney* orally), for the respondent.

LYNN, J. The respondent, Philadelphia Indemnity Insurance Company (Philadelphia), appeals an order of the Superior Court (*Smukler,* J.) finding that the petitioner, Great American Dining, Inc. (GAD), is an additional insured under a policy issued by Philadelphia. We affirm.

The trial court found the following facts. DW Ray Commons, LLC (DW Ray) owned and leased a building to Webster Place Center, Inc. (Webster Place). Prior to renting the building, DW Ray required Webster Place to obtain an insurance policy listing DW Ray as an additional insured. In March 2008, Webster Place obtained from Philadelphia a commercial general liability policy that contained a provision listing as an additional insured "[a]ny person or organization with respect to their liability arising out of the ownership, maintenance or use of that part of the premises leased or rented to [Webster Place] . . . ."

In October 2008, Dr. James Kenneth Wyly fell through the building's porch railing and suffered serious injuries. Dr. Wyly sued DW Ray and Webster Place for damages. After the Superior Court issued a declaration that DW Ray was an additional insured under Webster Place's policy with Philadelphia, Webster Place and DW Ray settled with Dr. Wyly and sued

GAD for contribution on the theory that GAD negligently constructed, installed, and maintained the porch railing. A jury found that GAD was 45% at fault for Dr. Wyly's injuries.

GAD then filed the present declaratory judgment action, asking the trial court to find that it is an additional insured under Webster Place's policy with Philadelphia, and, as such, entitled to reimbursement for defense costs incurred in the action for contribution, the judgment rendered against it, and costs and attorney's fees pursuant to RSA 491:22-b (2010) for bringing the action against Philadelphia to determine coverage.

The trial court determined that GAD is an additional insured under a provision of the policy titled "Managers, Landlords or Lessors of Premises" because the provision applies to "any person or organization" whose liability "aris[es] out of ownership, maintenance or use" of the leased premises. The court found that Philadelphia owed GAD a duty of defending the contribution case because Dr. Wyly's pleadings sufficiently alleged that GAD engaged in maintenance. As to Philadelphia's duty to indemnify GAD, the court concluded that "the trial evidence and the theory upon which the judgment was actually entered establish that GAD's liability arose from its 'maintenance' of the lease[d] premises." Having determined that GAD is an additional insured and that Philadelphia owed it a duty both to defend and to indemnify, the court awarded GAD reimbursement for defense costs and the judgment rendered in the contribution action as well as attorney's fees and costs. This appeal followed.

In an action for declaratory judgment under RSA 491:22-a (2010), the insurer bears the burden of establishing lack of coverage. *M. Mooney Corp. v. U.S. Fidelity & Guaranty Co.*, 136 N.H. 463, 466 (1992). "The fundamental goal of interpreting an insurance policy . . . is to carry out the intent of the contracting parties." *Bates v. Phenix Mut. Fire Ins. Co.*, 156 N.H. 719, 722 (2008) (quotation omitted). Our analysis begins with an examination of the insurance policy language. *Pro Con Constr. v. Acadia Ins. Co.*, 147 N.H. 470, 472 (2002). We look to the plain and ordinary meaning of the policy's words in context, *Concord Gen. Mut. Ins. Co. v. Mitchell*, 138 N.H. 229, 231 (1994), "and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." *Deyette v. Liberty Mut. Ins. Co.*, 142 N.H. 560, 561 (1997) (quotation omitted). This is an objective standard. *Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 683 (1993). "If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." *Brickley v. Progressive N. Ins. Co.*, 160 N.H. 625, 627 (2010) (quotation omitted).

The interpretation of an insurance policy, like any contract, is an issue of law for the court to decide. *Allstate Ins. Co. v. Armstrong*, 144 N.H. 170, 172 (1999). We review questions of law *de novo*. *In the Matter of Taber-McCarthy & McCarthy*, 160 N.H. 112, 115 (2010).

On appeal, Philadelphia argues that: (1) GAD was not an additional insured because it was not a manager, landlord, or lessor of the premises; (2) GAD's liability did not arise out of "the ownership, maintenance or use" of the premises leased to Webster Place; and (3) GAD was a stranger to the policy and ambiguities, therefore, need not be construed in its favor.

The policy language at issue here, Provision 2f, is the portion of the additional insured endorsement that provides:

2. Each of the following is also an insured:

f. **Managers, Landlords, or Lessors of Premises** — Any person or organization with respect to their liability arising out of the ownership, maintenance or use of that part of the premises leased or rented to you subject to the following additional exclusions:

This insurance does not apply to

(1) Any "occurrence" which takes place after you cease to be a tenant in that premises.

(2) Structural alterations, new construction or demolition operations performed by or on behalf of that person or organization.

The trial court found that Provision 2f covers more than just managers, landlords and lessors because, notwithstanding its heading, the provision broadly encompasses *any* person or organization with respect to its liability arising out of the ownership, maintenance or use of the premises. The court contrasted Provision 2f with Provision 2b, which defines as additional insureds "managers and supervisors . . . , *but only with respect to their duties as your managers and supervisors.*" (Emphasis added.) The court reasoned:

Importantly, the terms "managers and supervisors" are both included in the heading and in the language [of Provision 2b], indicating a clear intent to limit coverage only to managers and supervisors. Because Philadelphia did not similarly draft the "managers, landlords, and lessors" provision, the broader language of the provision controls.

In ruling that Provision 2f applies more broadly than its caption suggests, the court relied on *Concord Hospital*, 137 N.H. at 683, which states that "we disregard the labels attached to . . . policies and examine the various provisions themselves."

As an initial matter, we disagree with Philadelphia that the court misapplied *Concord Hospital*: consistent with that case, the court read the policy as a whole. In *Concord Hospital,* we addressed whether several medical malpractice insurance policies covered certain occurrences that the insured hospital reported to the insurer two days before the policies lapsed, but for which the hospital did not file claims until after the policies lapsed. *Concord Hosp.,* 137 N.H. at 682. The policies were labeled "claims made," which we described as "afford[ing] coverage for tort claims that [we]re . . . reported to the insurance company during the policy period." *Id.* at 683. We looked past the "claims made" label to the policies' various provisions to determine whether they were, in fact, "claims made," in that claims had to have been reported before the policies lapsed.

> [The policies] are not "claims made" simply because they say they are. "Claims made" is a category of policies that contain certain provisions; without those provisions, no amount of labelling can make these policies "claims made" or induce us to treat them as such. The layperson of average intelligence does not know what "claims made" refers to and cannot be expected to read crucial provisions into the term. The insurance company must spell out the provisions of a "claims made" policy.
>
> Accordingly, we disregard the labels attached to the . . . policies and examine the various provisions themselves.

*Id.* (citation omitted).

Even though three provisions in the policies stated that covered claims had to have been first made while the policies were still in force, a fourth provision stated that "[a] claim shall be considered to be *first made* when the company first receives written notice of the claim *or occurrence.*" *Id.* at 684 (quotation omitted). Reading the policies as a whole, we concluded that, although titled "claims made," the policies in fact offered coverage for claims made after the policy had expired, as long as the underlying occurrences were reported while the policy was still in effect. *Id.* at 687.

Similarly, we read insurance policies as a whole in *Hanover Insurance Co. v. Grondin*, 119 N.H. 394, 397 (1979), and *Atwood v. Hartford Accident & Indemnity Co.*, 116 N.H. 636 (1976), two cases on which Philadelphia relies in arguing that we should read the caption of Provision 2f as controlling. In *Atwood*, we considered whether the policy provided coverage by looking at the size and inconspicuous location of the provision

extending coverage, confusingly redundant headings in the policy, obscure phrasing of the exclusion, and the fact that one part of the policy contained four indications of coverage, whereas the relevant exclusion was buried among thirteen others. *Atwood*, 116 N.H. at 637-39. We also noted that the language obligating the insurer to indemnify the insured appeared in a sentence numbering one hundred twenty-nine words. *Id.* at 638. Based on all these factors, we concluded that the policy did not afford the insured fair notice of the exclusion. *Id.* at 639. In *Hanover Insurance Co.*, 119 N.H. at 397, we also considered the policy as a whole, emphasizing its clear and unambiguous language and simple and informative captions. We concluded that a reasonable person reading the policy as a whole would not expect coverage for the type of accident at issue. *Id.*

*Concord Hospital, Atwood,* and *Hanover Insurance Co.* stand for the proposition that, when construing an insurance policy, we must read it as a whole and from the vantage point of an ordinary person. *Hanover Ins. Co.,* 119 N.H. at 397; *Concord Hosp.,* 137 N.H. at 682-83; *Atwood,* 116 N.H. at 637; *see also Maville v. Peerless Ins. Co.,* 141 N.H. 317, 319 (1996); *Raudonis v. Ins. Co. of North America,* 137 N.H. 57, 59 (1993). We disagree with Philadelphia "that the scope of the holding in *Concord Hospital* extends to only allowing analyzing courts to disregard insurance policy captions, terms or words if they are in direct conflict with other portions of the policy."

Mindful of these principles, and reading the policy at issue as a whole, we address whether Provision 2f applies, as its caption suggests, to "Managers, Landlords, or Lessors of Premises" or, more broadly, to "[a]ny person or organization," as stated in its text.

■ Initially, we observe that the policy itself attempts to prevent over-reliance on captions. The general liability endorsement, which lists the various provisions' captions, also states: "The following is a summary of the Limits on Insurance and additional coverages provided by the endorsement. For complete details on specific coverages, consult the policy contract wording."

> Captions must be construed together with the provisions following them. In addition the captions of a policy are a part of it, and should be construed with the detailed provisions. The captions will not, of themselves, be taken to override the intention of the parties as shown by the provisions and clauses inserted therein, but may be read in connection with such clauses in determining the intention of the parties. Nor should the parties be deemed to have chosen wrong words in heading a clause in the policy if another construction can reasonably be found which gives an

harmonious effect to the heading and clause together. But an ambiguous provision of a policy may be explained by its caption. And the better rule is that a caption, at least where misleading, or confusing, may control over *less liberal* provisions in the policy itself. While captions in a policy are not insuring provisions and are not required to be drawn so as to touch on every element of the policy, they should not be repugnant or misleading as to the requirements of the coverage in the policy.

13 APPLEMAN, INSURANCE LAW AND PRACTICE § 7387, at 168-71 (revised ed. 1976) (emphasis added).

■ Construing the language of the policy as a whole, we find Provision 2f ambiguous because "more than one reasonable interpretation is possible." *MacLearn v. Commerce Ins. Co.*, 163 N.H. 241, 244 (2012). One such interpretation is that Provision 2f covers not only "managers, landlords, or lessors," but "any person or organization with respect to their liability arising out of the ownership, maintenance or use" of the premises, because in no other provision of the additional insured endorsement does the caption act as a limitation.

The policy is replete with limiting language. For example, Philadelphia drafted Section II of the policy to limit coverage for various types of insureds. An insured individual is covered "only with respect to the conduct of a business of which [he or she is] the sole owner"; the members and partners of an insured partnership or joint venture are covered "only with respect to the conduct of [the] business"; the members of an insured LLC "only with respect to the conduct of [the LLC's] business"; the LLC's managers "only with respect to their duties as . . . managers"; the stockholders of an insured organization "only with respect to their liability as stockholders"; and the insured's trustees "only with respect to their duties as trustees." The insured's volunteer workers and employees are also insured, "but only for acts within the scope of their employment . . . or while performing duties related to the conduct of . . . business." The insured's employees, volunteer workers, partners, and members are covered only for bodily injury incurred in the course of employment or performing duties related to the conduct of the insured's business.

The additional insured endorsement also contains numerous limitations. Each of the eight provisions describing the types of entities and individuals deemed additional insureds consists of a caption and text.

2. Each of the following is also an insured:

a. **Medical Directors and Administrators** — Your medical directors and administrators, but only while acting within the

scope of and during the course of their duties as such. Such duties do not include the furnishing or failure to furnish professional services of any physician or psychiatrist in the treatment of a patient.

b. **Managers and Supervisors** — If you are an organization other than a partnership or joint venture, your managers and supervisors are also insureds, but only with respect to their duties as your managers and supervisors.

c. **Broadened Named Insured** — Any organization and subsidiary thereof which you control and actively manage . . . . However, coverage does not apply to any organization or subsidiary not named in the Declarations as Named Insured, if they are also insured under another similar policy, but for its termination or the exhaustion of its limits of insurance.

d. **Funding Source** — Any person or organization with respect to their liability arising out of:

(1) Their financial control of you; or

(2) Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

e. **Home Care Providers** — At the first Named Insured's option, any person or organization under your direct supervision and control while providing for you private home respite or foster home care for the developmentally disabled.

f. **Managers, Landlords, or Lessors of Premises** — Any person or organization with respect to their liability arising out of the ownership, maintenance or use of that part of the premises leased or rented to you subject to the following additional exclusions:

This insurance does not apply to

(1) Any "occurrence" which takes place after you cease to be a tenant in that premises.

(2) Structural alterations, new construction or demolition operations performed by or on behalf of that person or organization.

g. **Lessor of Leased Equipment — Automatic Status When Required in Lease Agreement With You** — Any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization is to be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization. . . .

h. **Grantors of Permits** — Any state or political subdivision granting you a permit in connection with your premises subject to the following additional provision . . . .

Unlike Provision 2f, the captions of Provisions 2a, 2b, 2e, 2g, and 2h are either repeated or echoed in the provisions' text. With the exception of Provision 2f, each provision's limitations are set forth in the text rather than the caption. For example, despite its expansive caption "Funding Source," Provision 2d limits coverage to liability arising out of the financial control of the insured or of the ownership, maintenance, or control of the leased premises. Similarly, Provision 2a extends coverage to medical directors and administrators, but, as the text specifies, "only while acting within the scope of and during the course of their duties as such" and subject to further restrictions on the types of duties covered. Provision 2b specifies that managers and supervisors are covered only with respect to their duties as such. The text of Provision 2c, titled "Broadened Named Insured," limits its reach by setting forth the types of organizations covered by the provision. Similarly, the text of Provisions 2e, 2g, and 2h, which apply to home care providers, lessors of leased equipment, and grantors of permits, significantly narrow the provisions' captions.

Consistent with *Concord Hospital, Atwood*, and *Hanover Insurance Co.*, we must interpret Provision 2f "consider[ing] how the policy provisions interact in order to better understand a provision's meaning." NEW APPLEMAN ON INS. L. LIBR. ED. § 5.03[1], at 5-31 (Dec. 2010); *cf. Phaneuf Funeral Home v. Little Giant Pump Co.*, 163 N.H. 727, 734 (2012) (applying "the basic principle that words are known by the company they keep"). Throughout the policy and the additional insured endorsement, the parties inserted numerous limitations on coverage. Provision 2f itself contains

several limitations in its text: it limits coverage to liability arising out of the ownership, maintenance, or use of the leased premises and further excludes some types of occurrences and operations. None of these limitations references managers, landlords, or lessors. The parties to the policy were clearly able, but opted not to, include in the text of Provision 2f reference to the caption as they did, for example, in Provisions 2a, 2b, and 2e. Nor did they limit Provision 2f to the duties undertaken as managers, landlords, or lessors as they did in Provision 2b.

■ We reject Philadelphia's argument that reading Provision 2f as extending coverage to "any person or organization," rather than only "managers, landlords, or lessors," "would lead to the absurd result of improperly extending additional insured status to any independent construction or maintenance contractor with no involvement in the ownership or management of the property." "An insurance company remains free to limit its liability through clear and unambiguous policy language." *Weeks v. St. Paul Fire & Marine Ins. Co.*, 140 N.H. 641, 643 (1996) (quotation omitted). But having extended coverage to "liability arising out of the ownership, maintenance *or use*" of the leased premises, Philadelphia cannot now argue that it intended to limit coverage to only those with "involvement in the ownership or management of the property."

Nor are we persuaded that the trial court's reading of Provision 2f would lead to an absurd result by extending coverage to individuals who are strangers to the policy, such as contractors, electricians, plumbers, carpenters, snow plowers, exterminators, and " 'any' person or organization that worked in any capacity on the property." First, a broad reading of Provision 2f as covering any person or organization whose liability arises out of the ownership, maintenance, or use of the leased premises leads no more to an absurd result than do provisions in a motor vehicle insurance policy extending coverage to any individual operating the vehicle with the owner's consent, *see* RSA 264:18, VI (2004),[1] when such individual would also be a "stranger to the policy."

---

[1] RSA 264:18, VI states:

A motor vehicle liability policy . . . shall be subject . . . to the following provisions which need not be contained therein:

. . .

VI. The insurance applies to any person who has obtained possession or control of the vehicle of the insured with his express or implied consent even though the use in the course of which liability to pay damages arises has been expressly or impliedly forbidden by the insured or is otherwise unauthorized. This provision,

■ Second, Provision 2f covers only those persons and organizations whose liability *arises out of* the ownership, maintenance, or use of the leased premises. *See Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 13 (1995) ("The phrase 'arising out of' has been interpreted as . . . meaning 'originating from or growing out of or flowing from.' "). Thus, "any person or organization" is specifically limited by the terms of the provision. For all the foregoing reasons, we find that a reasonable insured could conclude that the caption of Provision 2f does not act as a limitation on the coverage set forth in the text.

■ We acknowledge that Philadelphia offers a plausible construction of the policy, *i.e.*, that the caption of Provision 2f, "Managers, Landlords, or Lessors of Premises," serves to narrow the provision's broad language referencing "[a]ny person or organization." When an insurance policy's language is ambiguous and one reasonable interpretation favors coverage, however, we construe the policy in the insured's favor and against the insurer. *Barking Dog v. Citizens Ins. Co. of America*, 164 N.H. 80, 84 (2012). We reject Philadelphia's argument that the trial court improperly construed ambiguities in favor of GAD.

■ Although it does not challenge the rule that ambiguities must be construed against the insurer and in favor of the insured, Philadelphia contends that ambiguous terms must not be construed in favor of GAD, a stranger to the policy. This is a circular argument because the very question before us is who is an insured under the terms of the policy and, where terms are ambiguous, how to construe them. We decline to adopt a new rule of construction, which would *not* construe ambiguities against the insurer when addressing who is an insured under the policy. The rationale for our firmly-established rule is equally as strong in such a situation as in any other: the insurer controls the language of the policy and the insurance contract aims "to provide protection for the insured." *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771 (1980) (adopting the majority rule of construction because "[t]his rule reflects the fundamental principle of contract law that doubtful language is to be construed most strongly against the party who used it in drafting the contract" (quotation omitted)); *cf. Northern Sec. Ins. Co., Inc. v. Doherty*, 987 A.2d 253, 256-57 (Vt. 2009) ("[T]he naming of the Trust as an additional insured . . . clearly falls within the realm of ambiguity as we have defined that term. Because the policy

---

however, shall not apply to the use of a vehicle converted with the intent to wrongfully deprive the owner of his property therein.

language is ambiguous, we construe it in favor of providing coverage for the beneficiaries of the Trust . . . ." (citation and quotation omitted)).

Next, Philadelphia contends that Provision 2f does not cover GAD because GAD's work on the porch railing constituted renovation rather than maintenance and the two terms are not synonymous. Philadelphia argues that renovation "connotes an action of restoring property to a good condition or making it like new again — which is an entirely different concept from maintenance, which only involves taking steps to keep or preserve the existing condition (or status quo)."

The policy does not define "maintenance" or "renovation." "Where disputed terms are not defined in the policy, we construe them in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Weeks*, 140 N.H. at 644 (quotation and ellipses omitted). Our review of the policy does not reveal, and Philadelphia has not explained, how we should construe the term "maintenance" when reading the policy as a whole.[2] Philadelphia argues that maintenance differs from renovation based upon definitions set forth in certain dictionaries, but other dictionaries define maintenance as potentially coextensive, or at least overlapping, with renovation in that both activities include the concept of repair. "Maintenance" is defined, in part, as "[t]he care and work put into property to keep it operating and productive; general repair and upkeep." BLACK'S LAW DICTIONARY 1039 (9th ed. 2009). "Renovation" means "restor[ation] to a former better state (as by cleaning, repairing, or rebuilding)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1054 (11th ed. 2003). "Repair" is defined, in part, as "restor[ing] by replacing a part or putting together what is torn or broken." *Id.* at 1055; *cf.* 8A L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 119:36, at 119-54 (1997) (in the context of automobile insurance, "[t]he *'maintenance'* aspect of the 'ownership, *maintenance*, or use' clause covers the act of repairing the covered automobile"). Given the variety of these overlapping definitions, "maintenance" may reasonably be understood to include "renovation." Furthermore, the only case which Philadelphia cites when distinguishing between maintenance and renovation, *Utility Service v. Dep't of Labor*, 331 S.W.3d 654, 657 (Mo. 2011), is entirely inapposite as it did not concern an insurance contract, but rather a statute which defined both "maintenance work" and "construction."

---

[2] *Cf. Weeks*, 140 N.H. at 644 (although "professional services" were not defined in the policy, when read as a whole, the policy covers more than medical malpractice where it states that it was designed "to protect against a variety of liability claims" and specifically excludes coverage for certain administrators when acting "as physicians in the direct treatment of patients" and does not cover employees who are "interns, externs, residents, dentists, osteopathic or medical doctors.").

■ Because Provision 2f applies to "[a]ny person or organization with respect to their liability arising out of the ownership, maintenance or use" of the premises, and because, read broadly, GAD's renovation of the porch railing constituted maintenance of the railing, we agree with the trial court that GAD is an additional insured under Philadelphia's policy.

■ We also agree that Philadelphia owed GAD a duty to defend it against the contribution actions brought by DW Ray and Webster Place.

> An insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy. In considering whether a duty to defend exists based on the sufficiency of the pleadings, we consider the reasonable expectations of the insured as to its rights under the policy. *An insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where, by any reasonable intendment of the pleadings, liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying writ can justify escape of the insurer from its obligation to defend.* In cases of doubt as to whether the writ against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

*N. Sec. Ins. Co. v. Connors*, 161 N.H. 645, 650 (2011) (quotation and citations omitted; emphasis added).

■ In their writs against GAD, DW Ray and Webster Place alleged that Dr. Wyly's claims for negligence flow directly from the actions of GAD and its employees and that, having settled Dr. Wyly's personal injury claims, DW Ray and Webster Place are entitled to contribution from GAD. Dr. Wyly's claims, in turn, can be reasonably read as alleging that GAD maintained the leased premises. *See* 14 L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 200:1, at 200-5 (2007) ("An insurer will have a duty to defend the insured in a suit if the complaint against the insured contains allegations that, if proved, would be covered under the policy.").

■ Dr. Wyly alleged that DW Ray, either directly or through an independent contractor, breached its duty to install or renovate the railing in a workmanlike fashion and in compliance with the building code. As Dr. Wyly alleged in the writ, "[t]he railing that failed to protect [him] was installed, modified and/or inspected by DW [Ray], or at its direction." In his claim against Webster Place, Dr. Wyly alleged that it owed him "a duty to ensure that the workm[e]n who renovated . . . this railing . . . were competent to complete their work." The writ also described DW Ray's and

Webster Place's duty as one "to correct obvious hazards, such as the railing." "[B]y any reasonable intendment of the pleadings, [GAD's] liability . . . can be inferred" from Dr. Wyly's allegations that an independent contractor, an entity working at DW Ray's direction, and/or Webster Place's workmen negligently installed, modified, inspected, and/or renovated the railing and failed to correct obvious hazards such as the railing. *N. Sec. Ins. Co.*, 161 N.H. at 650; *State Farm Ins. Co. v. Bruns*, 156 N.H. 708, 710 (2008).

To the extent that the term "renovation" is used ambiguously or inconsistently throughout the writ, "neither ambiguity nor inconsistency in the underlying complaint can justify escape of the insurer from its obligation to defend." *N. Sec. Ins. Co.*, 161 N.H. at 650. We resolve any doubt against the insurer and in favor of coverage. *Id.* The trial court properly ruled that Philadelphia owed GAD a duty to defend.

 The record also supports the trial court's conclusion that Philadelphia owed GAD a duty to indemnify. "[T]he majority of jurisdictions hold that the duty to defend is distinct from, and broader than, the duty to indemnify." 14 COUCH ON INSURANCE 3D, *supra* § 200:1, at 200-6.

> The distinction between the duty to defend and the duty to indemnify is based upon the time when the duties are determined. The duty to defend arises prior to the completion of litigation, and therefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined. In contrast, the duty to indemnify arises only once liability has been conclusively determined. In other words, because the duty to defend arises whenever an insurer ascertains facts that give rise to the possibility or the potential of liability to indemnify, the duty to defend must be assessed at the very outset of a case, unlike the duty to indemnify, which arises only when the insured's underlying liability is established.

14 COUCH ON INSURANCE 3D, *supra* § 200:3, at 200-9 to 200-10. "[T]he duty to indemnify adher[es] only if the third party suit proves meritorious." *Julio & Sons Co. v. Travelers Cas. and Sur. Co.*, 591 F. Supp. 2d 651, 657 (S.D.N.Y. 2008).

 "[T]he duty to indemnify depends on the facts established at trial and the theory under which the judgment is actually entered in the case." 43 AM. JUR. 2D *Insurance* § 684, at 746 (2003). "A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend, whereas, the facts actually established in the underlying suit control the duty to indemnify." *Julio & Sons Co.*, 591

F. Supp. 2d at 657 (quotation omitted); *see also VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011); *Travelers Ins. v. Waltham Indus. Laboratories*, 883 F.2d 1092, 1099 (1st Cir. 1989); *State Farm Mut. Auto. Ins. Co. v. Koshy*, 995 A.2d 651, 670 (Me. 2010).

Philadelphia argues that "[t]he evidence presented at the contribution trial clearly established that GAD's work at Webster Place, including work on the railing, involved new construction and renovation, not 'maintenance.' " Philadelphia relies on the testimony of Alex Ray, the owner of both DW Ray and GAD. Ray's testimony, however, does not support the conclusion that GAD did not maintain the property. Ray testified that, from the time DW Ray acquired the property and until the accident, GAD performed maintenance and repair on the property.

> [GAD] also ha[s] a maintenance division which maintains all the buildings and one of the extended components is[,] when we build or renovate a building[,] we generally have a pattern which we hire someone to do the major construction, which is an outside contractor if it's a major renovation. And then we finish some of that, painting, fitting out, finish work, mill work, as part of the maintenance job . . . .

In Webster Place's and DW Ray's contribution action against GAD, the court instructed the jury to find whether GAD's legal fault contributed to the cause of Dr. Wyly's injury and, in determining whether the parties, including GAD, were negligent, "to decide whether or not a party exercised reasonable care under all the circumstances in the construction, operation *and maintenance* of the property." (Emphasis added.) The court also instructed the jury to determine whether any of the parties, including GAD, had breached the duty of reasonable care: "in other words, whether any of the parties did or did not construct, operate *or maintain* the premises in accordance with the duty of due care . . . ." (Emphasis added.) The jury found that GAD was 45% at fault for Dr. Wyly's injuries.

▮▮▮▮▮ "We assume that the jury follows properly crafted instructions . . . ." *Cyr v. J.I. Case Co.*, 139 N.H. 193, 210 (1994). We note that it is unclear as to whether the jury's general verdict amounted to a finding that GAD's negligence lay in its construction, operation, maintenance, or any combination of these functions relating to the premises. Thus, it cannot be said with certainty whether the jury actually found GAD liable for negligent maintenance. *See Julio & Sons Co.*, 591 F. Supp. 2d at 657. Such certainty, however, is not necessary because it is not the insured's burden to establish coverage. "Under New Hampshire law, the burden of proving that no insurance coverage exists is on the insurer." *Laconia Rod & Gun Club v. Hartford Acc. & Indem. Co.*, 123 N.H. 179, 182 (1983); *Rivera v.*

*Liberty Mut. Fire Ins. Co.*, 163 N.H. 603, 606 (2012) ("In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition."). Because, under its general verdict, the jury could have found GAD liable for negligent maintenance, Philadelphia has not met its burden of establishing lack of coverage.

*Affirmed.*

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred.