NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2013-568


COGSWELL FARM CONDOMINIUM ASSOCIATION

v.

TOWER GROUP, INC. & a.

Argued: June 18, 2014
Opinion Issued: January 13, 2015


McDowell & Osburn, P.A., of Manchester (Gordon A. Rehnborg, Jr. on the brief and orally), and Scott & Scott, P.A., of Londonderry (Michael J. Scott on the brief), for the petitioner.

Downs Rachlin Martin PLLC, of Lebanon (Katherine M. Strickland on the brief), for respondent Tower Group, Inc.

Primmer Piper Eggleston & Cramer, PC, of Manchester (Doreen F. Connor on the brief and orally), for respondent Acadia Insurance Company.

BASSETT, J. In this declaratory judgment proceeding, the petitioner, Cogswell Farm Condominium Association (Cogswell), appeals an order of the Superior Court (McHugh, J.) finding that two exclusions in the insurance

policies issued by the respondents, Tower Group, Inc. (Tower) and Acadia Insurance Company (Acadia), preclude coverage in the petitioner's underlying lawsuit against Lemery Building Company, Inc. (Lemery). We reverse and remand.

The trial court found, or the record supports, the following facts. Between June 2000 and November 2003, Lemery was responsible for the construction and development of 24 residential condominium units in Atkinson. The owners of the condominium units are now members of the petitioner association. Acadia issued Lemery a commercial general liability insurance policy, providing coverage from March 2000 to August 2002. Tower issued Lemery an identical policy, with coverage from August 2002 until November 2003. In 2001, Lemery began selling the units to third parties.

In 2009, Cogswell sued Lemery and others, alleging negligence, breach of contract, and negligent supervision in the construction of the units. Cogswell asserted that the "weather barrier" components of the units – including the water/ice shield, flashing, siding, and vapor barrier – were defectively constructed and resulted in damage to the units due to water leaks.

In 2011, Cogswell filed a petition for declaratory judgment against Tower, seeking a declaration that its claims against Lemery were covered under Tower's policy. Cogswell later added Acadia as a party to the declaratory judgment action.

The respondents filed motions for summary judgment, arguing that Cogswell's claims against Lemery did not trigger coverage under their policies. The trial court entered summary judgment in favor of the respondents regarding coverage for Cogswell's breach of contract and negligent supervision claims against Lemery, but denied the motion as to the negligence claim. The court concluded that uncertainty existed regarding whether property damage to the condominium units occurred during the policy periods and, therefore, ordered that an evidentiary hearing be held to determine whether the negligence claim could proceed.

The only witness to testify at the evidentiary hearing was a construction consultant hired by Cogswell. As noted by the trial court in its order, the consultant opined regarding "numerous defects in the weather barrier" that caused "almost immediate[]" water damage to the exterior and interior finishes of the condominium units. The consultant observed that the damage went undetected for years and acknowledged that he was unable to discern the amount of damage that occurred prior to the expiration of each policy.

Following the hearing, Cogswell argued that its claims amounted to an "occurrence" under the policies, thereby triggering coverage. Cogswell also maintained that, although the exclusions contained within part J of each of the

2

policies precluded coverage for damage to the defectively constructed weather barriers, the exclusions did "not exclude coverage for the resulting damage to the otherwise nondefective 'exterior and interior finishes' . . . which directly resulted from water infiltration."

In response, the respondents again argued that Cogswell's claims did not trigger coverage under their policies. They also argued that, even if the trial court determined that coverage was triggered, two exclusions contained within the policies, J(1) and J(6), precluded coverage. Exclusion J(1) excludes coverage for "property damage" to property that Lemery "own[s], rent[s], or occup[ies]." Exclusion J(6) excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because '[Lemery's] work' was incorrectly performed on it."

The trial court issued supplemental orders denying the respondents' motions for summary judgment on the negligence claim. The court credited the consultant as being "highly credible" and ruled that "the negligence alleged by [Cogswell], if proven, would in fact constitute an occurrence" under the insurance policies, thus triggering coverage. The court also ruled that a jury would decide whether any property damage occurred during the policy periods. The court further declined to rule on the applicability of exclusions J(1) and J(6), reserving that determination for the jury as well.

The respondents then filed motions for reconsideration, arguing that the interpretation and application of exclusions J(1) and J(6) presented questions of law for the court – rather than the jury – to decide, and that, as a matter of law, the exclusions precluded coverage. In its motion, Tower also challenged the trial court's decision to allow a jury to determine whether property damage occurred during the policy periods. In response, Cogswell conceded that the court could "determine as a matter of law the meaning of exclusions [J](1) and [J](6)," but argued that, because "factual issues exist concerning whether these exclusions apply in this case," a jury should decide such factual issues. Cogswell also asserted that exclusions J(1) and J(6) were inapplicable.

In ruling upon the motions, the trial court vacated the portion of its prior order allowing the jury to determine whether property damage occurred during the policy periods. The court agreed that the issue of whether the two exclusions applied presented a question of law for it to decide, and it determined that exclusions J(1) and J(6) both applied and excluded coverage. Accordingly, the court concluded that neither Tower nor Acadia had a duty to defend or an "obligation [to pay] any damages to [Cogswell] if [Cogswell] is successful in the underlying litigation [against Lemery]." This appeal by Cogswell followed.

"In reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence, and all inferences properly drawn from them, in

3

the light most favorable to the non-moving party." Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 606 (2012). "Summary judgment may be granted only where no genuine issue of material fact is present, and the moving party is entitled to judgment as a matter of law." Id. "We review the trial court's application of the law to the facts de novo." Id.

"In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition." Id.; see RSA 491:22-a (2010). "The interpretation of insurance policy language is a question of law for this court to decide." Rivera, 163 N.H. at 606. "We review questions of law de novo." Great Am. Dining v. Philadelphia Indem. Ins. Co., 164 N.H. 612, 617 (2013). We first look to the plain and ordinary meaning of the policy's words in context, "and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." Id. at 616 (quotation omitted). "This is an objective standard." Id.

"The insurer asserting an exclusion of coverage bears the burden of proving that the exclusion applies." Rivera, 163 N.H. at 606. "If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." Great Am. Dining, 164 N.H. at 616 (quotation omitted); see Colony Ins. Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009) ("Ambiguity exists if reasonable disagreement between contracting parties leads to at least two interpretations of the language." (quotation omitted)).

On appeal, Cogswell first contends that the trial court erred in determining that exclusion J(1) operated to bar coverage for all the units at all times. Exclusion J(1) excludes coverage for "'[p]roperty damage' to . . . [p]roperty you own, rent, or occupy." "Property damage" is defined as either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." The term "you" refers to the insured, Lemery.

Cogswell concedes that exclusion J(1) excludes coverage for property damage that occurred while Lemery owned the condominium units – prior to its sale of the units to third parties beginning in 2001. However, Cogswell argues that coverage was not excluded under exclusion J(1) for damages sustained by the units after they had been sold by Lemery and while the policies were in effect. Notably, the respondents do not disagree with Cogswell. Neither do we: we conclude that the trial court erred in ruling that exclusion J(1) operated as an exclusion to bar coverage for each unit after it was sold. Because the units were sold at different times and the policies were in effect during two different time periods, on remand, the trial court must determine which units had been sold by Lemery but continued to be covered under the policies.

4

Cogswell next argues that the trial court erred in determining that exclusion J(6) applied to bar coverage. Exclusion J(6) precludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The term "your work" refers to any "[w]ork or operations performed by [Lemery] or on [Lemery's] behalf" and any "[m]aterials, parts or equipment furnished in connection with such work or operations." However, exclusion J(6) "does not apply to 'property damage' included in the 'products-completed operations hazard,'" which encompasses property damage that occurs when "all of the work called for in [Lemery's] contract has been completed" or when "that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project."

Cogswell maintains that "[e]xclusion J(6) is simply inapplicable" because Cogswell "is not contending that the two [respondent] insurance companies are obligated to provide coverage for the costs associated with repairing the defective weather barriers in the units." Rather, "[t]he damage for which coverage is claimed is the damage to the non-defective work that was caused by the defectively constructed weather barriers." In so arguing, Cogswell relies primarily upon Mid-Continent Cas. Co. v. JHP Development, Inc., 557 F.3d 207 (5th Cir. 2009), in which the court reviewed an exclusion identical to the one at issue in this case and concluded that the exclusion:

> bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property.

Mid-Continent Cas. Co., 557 F.3d at 215.

The respondents counter by arguing that, because Lemery was the general contractor responsible for the construction of the units, exclusion J(6) applies to preclude coverage for all damage caused by Lemery's defective work, including damage to work on the units that was not defective. The respondents assert that Cogswell's interpretation of exclusion J(6) would undermine the purpose of commercial general liability policies because those policies are not intended to serve as performance bonds or to insure typical business risks associated with faulty work. See McGowan v. State Farm Fire and Cas. Co., 100 P.3d 521, 525 (Colo. App. 2004). In support of this argument, the respondents cite decisions in other jurisdictions that have interpreted exclusions identical to exclusion J(6) and held that the exclusions were inapplicable in factual scenarios similar to that in the present case. See, e.g., Lafayette Ins. Co. v. Peerboom, 813 F. Supp. 2d 823, 829-35 (S.D. Miss. 2011); Century Indem. Co. v. Golden Hills Bldrs., 561 S.E.2d 355, 358-59 (S.C.

5

2002), <u>overruled on other grounds by</u> <u>Crossmann Communities v. Harleysville</u>, 717 S.E.2d 589, 594 (S.C. 2011).

For example, the respondents rely upon a decision by the South Carolina Supreme Court, in which homeowners alleged that the defective construction of their home's stucco exterior "caused moisture damage to the properly constructed substrate and framing of the home." <u>Century Indem. Co.</u>, 561 S.E.2d at 356. The insurance policy contained the exclusion at issue here, and, like Cogswell and the respondents in the present case, the parties disputed whether the exclusion applied to preclude coverage only for the defective work (the exterior stucco) or precluded coverage for all resulting damage to the home, including those parts that were not defectively constructed (the substrate and framing). <u>Id</u>. at 358-59. The court concluded that coverage for all of the water damage was excluded pursuant to the exclusion. <u>Id</u>. at 359. The court based its decision on the purpose of commercial general liability policies, which are "not intended to insure business risks, <u>i.e.</u>, risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage. . . . [Such] policies do not insure [an insured's] work itself, but rather, they generally insure consequential risks that stem from that work." <u>Id</u>. at 358 (quotations omitted); <u>see</u> <u>Lafayette Ins. Co.</u>, 813 F. Supp. 2d at 829-35 (concluding, for similar reasons, that the exclusion applied to bar coverage).

Although we recognize that the South Carolina Supreme Court and other courts have premised their conclusions upon the general purpose behind commercial general liability policies, we disagree with the respondents' assertion that those decisions necessarily render an alternative interpretation of exclusion J(6) unreasonable. <u>See</u> <u>Giacomelli v. Scottsdale Ins. Co.</u>, 221 P.3d 666, 673 (Mont. 2009) ("[A] split in authority over the interpretation of language in an insurance policy . . . is a <u>factor</u> that we will consider in determining whether ambiguity exists."). This is especially so given that, in New Hampshire, whether coverage exists "begins with an examination of the insurance policy language," <u>Great Am. Dining</u>, 164 N.H. at 616, rather than upon the general purpose of a certain type of insurance policy.

Here, exclusion J(6) can be interpreted in two ways. The exclusion can be reasonably read as the respondents suggest, in which the exclusion is construed broadly to exclude coverage for all damage to the insured's work product caused by the insured's defective work. Applied to the present case, this reading would, therefore, preclude coverage for all damage resulting from Lemery's defective work, including damage to the non-defectively constructed parts of the condominium units. As noted above, some courts have interpreted this exclusion in this manner. <u>See</u>, <u>e.g.</u>, <u>Lafayette Ins. Co.</u>, 813 F. Supp. 2d at 829-35; <u>Jet Line Services v. American Emp. Ins.</u>, 537 N.E.2d 107, 111 (Mass. 1989).

6

However, we also agree with Cogswell's assertion that the exclusion can be reasonably read to exclude coverage only for those parts of the property on which the allegedly defective work was done. Applied here, this interpretation would create a distinction between the components of the condominium units that were allegedly defective and those components that were not defective. This interpretation would preclude coverage for damage to the defective weather barriers, but allow coverage for damage to the non-defectively constructed parts of the condominium units that was caused by the defective weather barriers. Other courts have interpreted this exclusion in precisely this manner. See, e.g., Fortney & Weygandt v. American Mfrs. Mut. Ins., 595 F.3d 308, 311 (6th Cir. 2010) (deciding that the exclusion "applie[d] only to the cost of repairing or replacing distinct component parts on which the insured performed defective work"); Mid-Continent Cas. Co., 557 F.3d at 214-17 (concluding the same).

Because we conclude that exclusion J(6) is subject to more than one reasonable interpretation, and one of those interpretations provides coverage, an ambiguity exists that will be construed against the respondents. See Great Am. Dining, 164 N.H. at 616 ("If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." (quotation omitted)); Preferred Nat'l Ins. Co. v. Docusearch, 149 N.H. 759, 763 (2003) (noting that insurance companies are free to limit their liability through clear and unambiguous policy language). We, therefore, conclude that exclusion J(6) bars coverage for property damage to the defectively constructed portions of the condominium units, which are alleged to be the weather barriers; however, exclusion J(6) does not bar coverage for damage to those portions of the units that were not defectively constructed by Lemery but were damaged as a result of the defective work. Accordingly, we hold that the trial court erred in determining that exclusion J(6) operated as a complete bar for coverage of the claims asserted by Cogswell. On remand, the trial court should, consistent with this decision, determine the extent of damages that are not barred by exclusion J(6).

Cogswell further argues that exclusion J(6) does not apply due to the products-completed operations hazard exception to the exclusion. However, because we have ruled in Cogswell's favor in regard to exclusion J(6), we need not address this argument. Nor must we address Cogswell's arguments regarding the trial court's observations relating to proof of damages in the underlying case against Lemery. Because the trial court's observations are not germane to the issues in the declaratory judgment action now before us, we conclude that the arguments regarding this portion of the court's order do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1983).

Finally, the respondents argue that their insurance policies do not provide coverage because there is no evidence in the record of an "occurrence"

7

resulting in property damage sufficient to trigger coverage during the policy periods.  In response, Cogswell contends that neither respondent preserved this argument for our review.  We agree with Cogswell.

We generally require issues to be raised at the earliest possible time "because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance."  Sklar Realty v. Town of Merrimack, 125 N.H. 321, 328 (1984).  "This is only fair to the parties, the trial forums and the appellate courts."  Id.  In denying the respondents' motions for summary judgment on the negligence claim, the trial court ruled that "the negligence alleged by [Cogswell], if proven, would in fact constitute an occurrence" sufficient to trigger coverage under both policies.  Rather than challenge this ruling in their motions for reconsideration, the respondents advanced a different argument – that exclusions J(1) and J(6) precluded coverage.  Although the respondents noted in passing in their trial court pleadings that they "disput[ed]" that property damage occurred during the policy periods, because they failed to adequately develop the argument, we will not address this issue on appeal.  See Gulf Ins. Co. v. AMSCO, 153 N.H. 28, 41-43 (2005) (refusing to address the merits of arguments on appeal that were not adequately raised below).  Moreover, we observe that neither respondent filed an appeal or cross-appeal identifying this issue.  See Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 784 (2011) ("Appellate questions not presented in a notice of appeal are generally considered waived by this court." (quotation omitted)).  Finally, the respondents asserted at oral argument that this issue was comprised within the questions presented by Cogswell in its notice of appeal.  We are not, however, persuaded that this issue is fairly encompassed within the questions presented by Cogswell; therefore, we deem the issue waived.  See id.; cf. Town of Barrington v. Townsend, 164 N.H. 241, 245 (2012) (stating that the questions presented include subsidiary questions fairly comprised therein).

Reversed and remanded.

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.

8